UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.

MARIA EDUARDA GAVIO SILVA, PPA PRISCILA
GALHARDO DOS SANTOS,
                              Plaintiffs,

V.

QUINDELYN COOK, M.D.,
CHRISTINE NAOUM HEFFERNAN, R.N.,
ALAN NGUYEN, M.D.,
CINDY O'NEAL, FNP-C,
BETH ISRAEL DEACONESS HOSPITAL – PLYMOUTH, INC.,
BOSTON MEDICAL CENTER CORP., AND
THE UNITED STATES OF AMERICA
                              Defendants.

## ***COMPLAINT***

### **Parties**

1.      Plaintiff, Maria Eduarda Gavio Silva, is a minor who brings this action through her mother and next friend, Priscila Galhardo Dos Santos, a resident of Hanover, Plymouth County, Massachusetts.

2.      Defendant, Quindelyn Cook, M.D., was at all times relevant to this complaint a physician assistant licensed to practice in the Commonwealth of Massachusetts.

3.      Defendant, Christine Naoum Heffernan, R.N., was at all times relevant to this complaint a nurse licensed to practice in the Commonwealth of Massachusetts.

4.      Defendant, Alan Nguyen, M.D., was at all times relevant to this complaint a physician licensed to practice in the Commonwealth of Massachusetts.

5.      Defendant, Cindy O'Neal, FNP-C was at all times relevant to this complaint a nurse practitioner licensed to practice in the Commonwealth of Massachusetts.

6.      Defendant, Beth Israel Deaconess Hospital – Plymouth, Inc. was at all times relevant to this complaint a corporation duly organized and existing under the laws of the Commonwealth of Massachusetts, with a principal office at 275 Sandwich Street, Plymouth in Plymouth County, Massachusetts 02360.

1

7.      Defendant, Boston Medical Center Corp. was at all times relevant to this complaint a corporation duly organized and existing under the laws of the Commonwealth of Massachusetts, with a principal office at 1 Boston Medical Center Place, Boston in Suffolk County, Massachusetts 02118.

8.      Defendant, the United States of America, is the appropriate Defendant named in place of Cindy O'Neil, C.N.P. and Harbor Community Health Center – Plymouth, located in Plymouth, Plymouth County, Massachusetts, under the Federal Tort Claims Act.

## Facts Common to All Counts

9.      This is a complaint for damages arising from the substandard care and treatment rendered to Maria Eduarda Gavio Silva (hereinafter, "Maria" or "the plaintiff") by Quindelyn Cook, M.D., Christine Naoum Heffernan, R.N., Alan Nguyen, M.D., Cindy O'Neal, FNP-C, Beth Israel Deaconess Hospital – Plymouth, Inc., Boston Medical Center Corp. and the United States of America (hereinafter, "the defendants").  Under the Federal Tort Claims Act, the United States of America is the appropriate defendant named in place of Harbor Community Health Center – Plymouth, which is a federally funded health clinic.  As a direct result of the substandard care rendered by the defendants, Ms. Silva sustained severe and permanent personal injuries.

10.      The Jurisdiction of this Court is lawful under 28 U.S.C. § 1346(b) and proper as the plaintiff lives in the Commonwealth of Massachusetts.

11.      Venue is proper within this district under 28 U.S.C. § 1402(b) as the acts complained of occurred in the District of Massachusetts.

12.      The plaintiff did not discover, nor could she have reasonably discovered, in the exercise of reasonable diligence, the defendant's malpractice until after 3/11/23, which is less than two years from the presentment of her administrative tort claim on 2/26/25 and less than three years from the filing of this Complaint.  All conditions precedent to filing this Complaint, including but not limited to, the exhaustion of administrative remedies under the Federal Torts Claim Act, 28 U.S.C. §§ 1346, 2671 et seq. have been satisfied.

13.      The plaintiff has fully complied with the provisions of 28 U.S.C. §2675 of the Federal Tort Claims Act and all statutory prerequisites to the filing of this Complaint have been satisfied.

14.      On 3/11/23, Maria Eduarda Gavio Silva, at the age of 13, suffered left eye vision loss due to optic nerve damage from optic neuritis.

15.      In March 2023, Maria's medical history included dermatitis, chronic urticaria, angioedema, food and medication allergies, and constipation. A visual acuity screening in August 2021 demonstrated 20/25 vision in the left eye without correction.

16.      On 1/26/23, Maria was seen by Quindelyn Cook, M.D. of Boston Medical Center for follow up for increased symptoms of pruritus, eyelid and facial swelling.  Maria had been a patient of Dr. Cook's since at least January 2022. On 1/26/23, she was noted to have rash, chronic

itching, facial swelling and positive food allergies. Dr. Cook noted that Maria had significant work up which demonstrated elevated anti IgE antibodies, possibly due to Xolair, allergy testing negative for certain food allergies including shrimp and salmon, and an unremarkable work up for autoimmune disease and HAE (including ANA, and anti-TPO antibodies). The neck plaques were noted to have worsened in appearance, and to have spread anteriorly since prior visit earlier in the month. It was also noted that she did not have paradoxical worsening of swelling with desloratadine and itching had decreased slightly. Dr. Cook noted that Maria's multiple skin problems could not be fully explained by a unifying diagnosis. She noted IgE mediated food allergy ruled out but she can continue to avoid shrimp and salmon due to past symptoms; continue Clarinex daily; continue sarna lotion as needed; continue Xolair injections 150 mg SQ every 14 days (will reassess after 1 year of treatment in April 2023); will recheck elevated anti-IgE antibody in 6 months; discontinue tacromilus and will try to obtain pimecrolimus; and consult dermatology for patch testing and in person evaluation. Dr. Cook noted that there is likely no underlying autoimmune disease.

17.    On 2/10/23 and 2/24/23, Maria received Xolair injections. On 3/3/23, Maria's mother reached out to Dr. Cook's office for swelling, redness and itchiness and was directed to give "the emergency medicine," hydroxyzine HCL (Atarax) 25 mg. She also made an appointment to be seen by a primary care provider (PCP) on 3/9/23. Maria took the hydroxyzine daily at night for 3 days.

18.    On 3/6/23, Maria's mother contacted Dr. Cook's office. She got a call back from Christine Naoum Heffernan, R.N. with an interpreter on the line. Ms. Santos reported Maria's condition including new left eye pain. In her telephone note, Nurse Heffernan noted a "red, swollen, and itchy" bump on Maria's eyelid that had been present for the past two days. Nurse Heffernan noted "[i]t hurts and throbs." No pain score was noted. Nurse Heffernan noted that the white of the eye was clear. It was noted that Maria had been on hydroxyzine 25 mg nightly for the past three days. Nurse Heffernan also noted typical rash under chin, and papule on underside of forearm. Nurse Heffernan recommended that Maria's mother take her to be evaluated for a stye and the papule. Maria's mother informed her that the papule is normal for her. After consulting with Alan Nguyen, M.D., Nurse Heffernan recommended that Maria see her PCP to have the eye evaluated.

19.    Nurse Heffernan and Dr. Nguyen failed to elicit relevant further information concerning Maria's eye pain, recognize and appreciate that Maria's complaint of new onset of left eye pain was concerning for an ophthalmologic emergency, and advise Ms. Santos to take Maria to an emergency department with ophthalmology services for evaluation or coordinate same day/emergent evaluation by an ophthalmologist on an outpatient basis.

20.    Following this phone call on 3/6/23, Ms. Silva took Maria to the Emergency Department of Beth Israel Deaconess Hospital – Plymouth, where Maria's condition was deemed non-emergent, and they were essentially turned away during the registration process and refused treatment by a staff member of the hospital. Ms. Silva will confirm that there was no actual screening evaluation performed and no hospital records have been provided for this encounter to indicate that the patient was ever examined or medically screened at all, in violation of the Emergency Medical Treatment and Active Labor Act, 42 U.S.C. § 1395dd ("EMTALA").

3

21.     On 3/7/23, Maria presented to her PCP, Cindy O'Neil, FNP-C at Harbor Community Health Center – Plymouth for "eye pain." NP O'Neil also noted decreased vision in the left eye, and worsened swelling around the eyelids which started a few days earlier. Under review of systems, eye pain and visual disturbance were noted. Maria was noted to be negative for photophobia, discharge, redness, and itching. NP O'Neil's eye exam was documented as normal, with white sclera, no tearing, and no visible eyelid irritation or drainage. Maria was told she could use Aquaphor for lid irritation.

22.     Despite Ms. Silva's new acute onset of decreased left eye vision and severe eye pain, NP O'Neil did not refer Maria to the emergency department with ophthalmology services or arrange for an emergent ophthalmology appointment. Rather, she ordered a routine referral to ophthalmology to take place sometime in the next 365 days. Maria's mother was instructed to return if symptoms worsened or did not improve.

23.     On 3/10/23, Maria presented to Dr. Cook's office for a previously scheduled Xolair injection. Maria was seen by Dr. Cook at or around 3:00 p.m. Reason for visit was entered as "blurring of visual image of left eye." Dr. Cook documented a "brief check-in" and noted mistakenly that Maria had been seen in the emergency department (as opposed to her primary care office as instructed) for a stye and eyelid swelling and that Maria was advised to discontinue Clarinex. Dr. Cook noted that Maria had self-discontinued hydroxyzine. Dr. Cook noted left eye, loss of focus, flashes of color, no floaters, no overt photophobia, no prior history of vision issues, and placed an urgent referral to ophthalmology. The visit diagnosis was recorded as "blurring of visual image of left eye." At or around 3:30 p.m., Nurse Heffernan administered the Xolair injection.

24.     Dr. Cook failed to refer Maria to an emergency department with ophthalmology services or arrange for an emergent ophthalmology consult, and proceeded to allow further administration of Xolair, despite optic neuritis being a documented rare adverse event following administration of omalizumab (Xolair). The injection should have been held pending ophthalmologic evaluation in a patient such as Maria presenting with visual complaints.

25.     Following the appointment, Ms. Santos took Maria to Boston Medical Center's Ophthalmology Department to try to schedule the appointment. She was told by Boston Medical Center staff that there was no immediate availability, that they would contact her with a date as soon as possible, and that she could follow up with them on Monday.

26.     On 3/11/23, Maria awoke with loss of vision in her left eye. Her vision went from blurry to black. Her mother immediately contacted the Ophthalmology Department at Boston Medical Center where Maria had been referred for evaluation by both Dr. Cook and NP O'Neil to inform them of Maria's loss of vision, and see if she could be seen earlier. She was informed that the earliest available appointment was not until 3/14/23. The staff member at Boston Medical Center who Ms. Silva spoke to stated that since Maria's vision had already been lost, there was nothing they could do. Maria's mother was not advised to go to an emergency department with ophthalmology services.

4

27.     On 3/14/23, Maria was evaluated as scheduled by ophthalmology at Boston Medical Center (BMC). Ophthalmology noted that on 3/7/23 Maria had "intense" left eye pain with blurry vision. The vision worsened and she now reported darkening of her central vision, with peripheral light perception. On examination, ophthalmology documented hand motion vision and pain with extraocular movements (EOMs).  A dilated fundus exam revealed 360-degree disc edema in the left eye.  Left eye grade 2-3 circ disc edema; no hemorrhages.  A broad differential for unilateral optic disc edema was noted.  Given the acute presentation, Maria was referred to the emergency department for further workup, including an MRI of the brain and orbits and infectious work up. Ophthalmology also recommended a neurology consultation.

28.     Maria presented to the BMC Emergency Dept and was admitted to BMC for left eye pain and vision loss.  Her MRI of Brain and Orbits, and cervical and thoracic spine, with and without contrast dated 3/14/23 demonstrated diffuse enlargement of the left intraorbital optic nerve with some involvement of the left optic nerve to approximately the level of the optic canal with associated increased T2 signal with abnormal enhancement, consistent with optic neuritis. She had demyelinating panel labs and CSF studies as well. She had a low vitamin D level (18) and was started on supplementation. The lumbar puncture with CSF revealed 2 WBCs, protein 29, glucose 59, and negative OCBs.

29.     Maria received five days of IV steroids followed by three days of intravenous immunoglobulin (IVIG), resulting in minimal improvement subjectively, although notable improvement on fundus exam with ophthalmology.  On 3/19/23, Maria was discharged on an oral prednisone taper, with plan to follow up with neurology, ophthalmology, and neuroimmunology. The demyelination panel was pending at discharge but later resulted negative.

30.     On 3/21/23, Maria was seen by neurology who noted her history and continued significant visual deficits on the left with a visual acuity of 20/200. Given continued visual deficit, direct admission for initiation of plasma exchange was advised in order to attempt to rescue any salvageable vision.

31.     On 3/22/2023. Maria was admitted to Boston Children's Hospital for consideration of plasma exchange for treatment of her left optic neuritis. She received intensive imaging with stable findings consistent with her prior MRI from 3/14/23. She had frequent ophthalmology exams and underwent a five-day course (3/24, 3/27, 3/29, 3/31) of plasma exchange. On 3/31/23, Maria experienced new-onset blurry vision in her right eye, with her visual acuity decreasing from 20/20 the previous day to 20/100.  Her left eye remained stable.  She had improvement in right eye vision the following day to 20/25.  She was readministered 3 days of IVMP following by repeat IVIGx 2 days. She was discharged on 4/6/23.  On 5/18/23, Maria came off oral prednisone.

32.     In January 2024, neurology noted idiopathic optic neuritis and significant vision loss in the left eye (VA of 20/100) despite aggressive immunomodulatory treatment.

33.     On 2/6/24, Maria's left eye VA was 20/600 and she was treated with steroids.  Her MRI dated 2/27/24 demonstrated stable appearance and extension of previously noted signal changes in the left optic nerve, consistent with the known diagnosis of optic neuritis. This was again noted to be associated with an inflammatory process involving the peripheral optic nerve

sheath, extending along the intraorbital and intracanalicular segments. There was no evidence of involvement of the optic chiasm or demyelinating disease within the brain parenchyma.

34.    Today, Maria follows with Longwood Ophthalmology. She is noted to have permanent left eye loss of vision.

35.    Complaints of eye pain or vision changes in a pediatric patient warrants a full structured eye evaluation and referral to an Emergency Department with ophthalmology services or ophthalmologist for same day evaluation if the patient has any concerning findings including but not limited to decreased or blurry vision, visual field defect or new diplopia; and/or moderate to severe eye pain, deep ache or pain with eye movements. These are concerning findings for eye conditions that require same day evaluation by a specialist preferably in the ED setting to rule out a primary ophthalmic emergency, such as optic neuritis.

36.    Optic neuritis is inflammation of the optic nerve that carries visual information from the eye to the brain. Inflammation can lead to eye pain and vision changes, and is considered a vision threatening emergency in children. A child's history of allergies does not obviate the need for a full structured eye evaluation and referral to ED or specialist for same day evaluation for new onset of acute significant eye pain and/or worsened vision. The emergency room or same day specialist evaluation is necessary for testing which is not available in routine primary care or other settings. When the optic nerve is inflamed, vision can become blurred or dim because the nerve fibers no longer transmit visual signals properly to the brain. Signs and symptoms of optic neuritis include, but are not limited to, blurry or dim vision, loss of color vision, flashing lights, eye pain often described as pain behind or in the eye, and/or sudden central vision loss in one eye. A hallmark feature of optic neuritis is pain that worsens with eye movement. Vision changes may progress over days or hours.

37.    Same day or emergent evaluation is critical because early diagnosis and treatment of optic neuritis are associated with significantly better outcomes. Early administration of high dose intravenous steroids accelerates visual recovery in acute optic neuritis across etiologies and is the standard treatment upon diagnosis to limit inflammation. With over a week delay in treatment, the patient, more likely than not, will suffer irreversible axonal and cytoskeletal damage, leading to a worsened visual outcome, as occurred in this case.

38.    In the pediatric patient, optic neuritis may be caused by post-infectious inflammation after viral illness, autoimmune demyelinating disorders, systemic autoimmune diseases, or direct infections of the nervous system or orbit. In addition, there are idiopathic cases in which no specific trigger is found. Standard treatment for acute optic neuritis in pediatric patient is high-dose IV methylprednisolone to hasten visual recover, reduce inflammation and potential optic nerve damage while evaluation is ongoing to determine the cause which will determine what if any other further treatment is needed. Early diagnosis of optic neuritis is crucial to initiate prompt treatment, identify underlying conditions, and improve long-term visual and neurological outcomes. Delay in diagnosis and treatment of optic neuritis (i.e., prolonged untreated inflammation) is associated with worsened visual outcomes due to increased axonal damage and demyelination.

39.     Sudden unexplained vision loss in a child is a medical emergency that requires referral to an ER with ophthalmology services or immediate evaluation by the specialist. Sudden vision loss can stem from various critical issues, including retinal detachment, optic nerve disorders, or central retinal artery occlusion, where the treatment window is often limited. Delays in evaluation can result in permanent vision loss. Non-physician staff lack the authority to triage emergencies accurately, and thus it is essential for ophthalmology offices to have triage protocols in place to ensure timely and consistent patient care, especially for patients reporting an ophthalmology emergency such as sudden unexplained vision loss. Clear written guidelines serve to train staff and prioritize high-acuity patients.  It is not appropriate for staff to advise a parent reporting sudden unexplained vision loss in a child that it is acceptable to wait 3 days to be seen by ophthalmology. Rather, if the practice cannot accommodate an emergency evaluation, the patient or family member on the patient's behalf, must be directed to take the patient to an ER with ophthalmology services. Of note, Boston Medical Center holds themselves out as a facility which has ophthalmologists who are available 24/7 for emergency eye care.

40.     The accepted standard of care in Massachusetts in 2023 to present required the average qualified pediatric nurse practitioner, pediatric allergist/immunologist, and pediatric registered nurse providing care and treatment to a pediatric patient with complaints of new onset significant eye pain, or new onset significant eye pain and decreased vision, such as Maria Eduarda Gavio Silva, to elicit relevant information concerning the patient's symptoms including but not limited to the severity, specific location and characteristics of the pain;  suspect a primary ophthalmologic emergency for significant pain within the eye; and refer the patient to an Emergency Department with ophthalmology services for evaluation or coordinate same day/emergent evaluation by an ophthalmologist on an outpatient basis. Furthermore, in a patient with new onset of eye pain and decreased vision, the pediatric allergist/immunologist should refrain from allowing administration of Xolair, until the patient is evaluated by ophthalmology.

41.     The accepted standard of care in Massachusetts in 2023 to present required the average qualified ophthalmology practice and its agents, servants and/or employees to have in place protocols, policies and procedures governing the triage of patients seeking to be seen by an ophthalmologist, including patients with an ophthalmology emergency, such as sudden unexplained vision loss,  to properly train staff regarding office/clinic protocols, policies and procedures governing the triage of patients seeking appointments or to be seen by an ophthalmologist, when performing patient triage, to recognize and appreciate that decreased vision and unilateral eye pain is an ophthalmology emergency and requires emergent evaluation by one of their ophthalmologists or referral to an Emergency Department with ophthalmology services for evaluation, when performing patient triage, to recognize and appreciate that sudden unexplained vision loss in a pediatric patient is an ophthalmology emergency and requires emergent evaluation by one of their ophthalmologists or referral to an Emergency Department with ophthalmology services for evaluation. It is substandard to advise the patient or family member that since vision loss had already occurred emergent evaluation was not warranted.

42.     Any hospital that has an emergency department and receives Medicare funds is subject to the requirements of Emergency Medical Treatment and Active Labor Act ("EMTALA"). 42 U.S.C. § 1395cc(a)(1). Beth Israel Hospital – Plymouth, Inc. operates an emergency department and participates in Medicare, therefore it is subject to EMTALA.

7

43.    Under EMTALA, in the case of a hospital that has a hospital emergency department, such as Beth Israel Hospital – Plymouth, if any individual comes to the emergency department and a request is made on the individual's behalf for examination or treatment for a medical condition, "the hospital must provide for an appropriate medical screening examination within the capability of the hospital's emergency department, including ancillary services routinely available to the emergency department, to determine whether or not an emergency medical condition exists." Id. § 1395dd(a).

44.    EMTALA defines "emergency medical condition" as "a medical condition manifesting itself by acute symptoms of sufficient severity (including severe pain) such that the absence of immediate medical attention could reasonably be expected to result in—(i) placing the health of the individual (or, with respect to a pregnant woman, the health of the woman or her unborn child) in serious jeopardy, or (ii) serious impairment to bodily functions, or (iii) serious dysfunction of any bodily organ or part." Id. § 1395dd(e)(1).

45.    To a reasonable degree of medical certainty, the care and treatment rendered to Maria Eduarda Gavio Silva by pediatric allergist/immunologist Quindelyn Cook, M.D. on 3/10 fell below the accepted standards of care required of the average qualified pediatric allergist/immunologist providing care and treatment to a pediatric patient with complaints of new onset significant eye pain and decreased vision when Dr. Cook failed to elicit relevant information concerning the patient's symptoms including but not limited to the severity, specific location and characteristics of the pain; failed to suspect a primary ophthalmologic emergency; failed to refer Maria to an Emergency Department with ophthalmology services for evaluation or coordinate same day/emergent evaluation by an ophthalmologist on an outpatient basis; and allowed the administration of Xolair.

46.    To a reasonable degree of medical certainty, as a direct result of Dr. Cook's substandard care and treatment, Maria Eduarda Gavio Silva suffered a significant delay in the diagnosis and treatment of her optic neuritis resulting in left eye vision loss. Had Dr. Cook complied with the accepted standard of care as set forth above, Maria would have been evaluated by ophthalmology on an emergent basis, her optic neuritis would have been diagnosed and treated with IV steroids on or around 3/10/23, and more likely than not, she would not have suffered the significant left eye vision loss with which she lives today.

47.    To a reasonable degree of medical certainty, the care and treatment rendered to Maria Eduarda Gavio Silva by Christine Naoum Heffernan, R.N. on 3/6/23 fell below the accepted standards of care required of the average qualified Registered Nurse providing care and treatment to a pediatric patient with new onset significant eye pain, when Nurse Heffernan failed to elicit relevant information concerning the patient's symptoms including but not limited to the severity, specific location and characteristics of the pain; failed to suspect a primary ophthalmologic emergency; and failed to refer Maria to an Emergency Department with ophthalmology services for evaluation or coordinate same day/emergent evaluation by an ophthalmologist on an outpatient basis.

48.    To a reasonable degree of medical certainty, as a direct result of Nurse Heffernan's substandard care and treatment, Maria Eduarda Gavio Silva suffered a significant delay in the

diagnosis and treatment of her optic neuritis resulting in left eye vision loss. Had Nurse Heffernan complied with the accepted standard of care as set forth above, Maria would have been evaluated by ophthalmology on an emergent basis, her optic neuritis would have been diagnosed and treated with IV steroids on or around 3/6/23, and more likely than not, she would not have suffered the significant left eye vision loss with which she lives today.

49.    To a reasonable degree of medical certainty, the care and treatment rendered to Maria Eduarda Gavio Silva by pediatric allergist/immunologist Alan Nguyen, M.D. on 3/6/23 fell below the accepted standards of care required of the average qualified pediatric allergist/immunologist being consulted by a nurse on a pediatric patient with symptoms including eye pain when Dr. Nguyen failed to elicit relevant information concerning the patient's symptoms including but not limited to the severity, specific location and characteristics of the pain; failed to suspect a primary ophthalmologic emergency; and failed to direct Nurse Heffernan to refer Maria to an Emergency Department with ophthalmology services for evaluation or coordinate same day/emergent evaluation by an ophthalmologist on an outpatient basis

50.    To a reasonable degree of medical certainty, as a direct result of Dr. Nguyen's substandard care and treatment, Maria Eduarda Gavio Silva suffered a significant delay in the diagnosis and treatment of her optic neuritis resulting in left eye vision loss. Had Dr. Nguyen complied with the accepted standard of care as set forth above, Maria would have been evaluated by ophthalmology on an emergent basis, her optic neuritis would have been diagnosed and treated with IV steroids on or around 3/6/23, and more likely than not, she would not have suffered the significant left eye vision loss with which she lives today.

51.    To a reasonable degree of medical certainty, the care and treatment rendered to Maria Eduarda Gavio Silva by Cindy O'Neil FNP-C on 3/7/23 fell below the accepted standards of care required of the average qualified pediatric nurse practitioner providing care and treatment to a pediatric patient with complaints of new onset significant eye pain and decreased vision, when NP O'Neil failed to elicit relevant information concerning the patient's symptoms including but not limited to the severity, specific location and characteristics of the pain; suspect a primary ophthalmologic emergency; and refer Maria to an Emergency Department with ophthalmology services for evaluation or coordinate same day/emergent evaluation by an ophthalmologist on an outpatient basis.

52.    To a reasonable degree of medical certainty, as a direct result of NP O'Neil's substandard care and treatment, Maria Eduarda Gavio Silva suffered a significant delay in the diagnosis and treatment of her optic neuritis resulting in left eye vision loss. Had NP O'Neil complied with the accepted standard of care as set forth above, Maria would have been evaluated by ophthalmology on an emergent basis, her optic neuritis would have been diagnosed and treated with IV steroids as early as 3/7/23 or 3/8/23, and more likely than not, she would not have suffered the significant left eye vision loss with which she lives today.

53.    To a reasonable degree of medical certainty, the care and treatment rendered by Boston Medical Center Corp. through its Pediatric Ophthalmology Clinic/ Department and its agents, servants and/or employees in March 2023 to Maria Eduarda Gavio Silva fell below the accepted standard of care required when Boston Medical Center Corp. and its agents, servants,

and/or employees failed to have in place protocols, policies and procedures governing the triage of patients seeking to be seen by an ophthalmologist, including patients with an ophthalmology emergency, such as sudden unexplained vision loss, failed to properly train staff regarding office/clinic protocols, policies and procedures governing the triage of patients seeking appointments or to be seen by an ophthalmologist, when performing in person patient triage on 3/10/23, failed to recognize and appreciate that Maria's decreased vision and unilateral eye pain is an ophthalmology emergency and requires emergent evaluation by one of their ophthalmologists or referral to an Emergency Department with ophthalmology services for evaluation, and when performing patient triage over the phone on 3/11/23, Boston Medical Center Corp. and its agents, servants, and or employees failed to recognize and appreciate that Maria's sudden unexplained vision loss in a pediatric patient is an ophthalmology emergency and requires emergent evaluation by a BMC ophthalmologist or referral to an Emergency Department with ophthalmology services for evaluation. It was substandard of Boston Medical Center Corp. and its agents, servants, and/or employees to advise the patient or family member that since vision loss had already occurred emergent evaluation was not warranted.

54.     To a reasonable degree of medical certainty, as a direct result of the substandard care and treatment of Boston Medical Center Corp. and its agents, servants, and/or employees as set for the above, Maria Eduarda Gavio Silva suffered a significant delay in the diagnosis and treatment of her optic neuritis resulting in left eye vision loss. Had Boston Medical Center Corp. and its agents, servants, and/or employees complied with the accepted standards of care set forth above, Maria would have been evaluated by ophthalmology on an emergent basis on 3/10/23, her optic neuritis would have been diagnosed and treated with IV steroids 3 or 4 days earlier, and more likely than not, she would not have suffered the significant left eye vision loss with which she lives today.

55.     To a reasonable degree of medical certainty, the care and treatment rendered by Beth Israel Deaconess Hospital – Plymouth, Inc. and its agents, servants and/or employees on 3/6/233 to Maria Eduarda Gavio Silva fell below the accepted standard of care required when Beth Israel Deaconess Hospital – Plymouth, Inc. and its agents, servants, and/or employees failed to have in place protocols, policies and procedures governing the triage of patients seeking to be seen by the emergency department, including patients with an ophthalmology emergency, failed to properly train staff to medically screen and examine patients who presented to its Emergency Department.

56.     To a reasonable degree of medical certainty, as a direct result of the substandard care and treatment of Beth Israel Deaconess Hospital – Plymouth, Inc. and its agents, servants, and/or employees as set for the above, Maria Eduarda Gavio Silva suffered a significant delay in the diagnosis and treatment of her optic neuritis resulting in left eye vision loss. Had Beth Israel Deaconess Hospital – Plymouth, Inc. and its agents, servants, and/or employees complied with the accepted standards of care set forth above, Maria would have been medically screened and evaluated by ophthalmology on an emergent basis on 3/6/23, her optic neuritis would have been diagnosed and treated with IV steroids, and more likely than not, she would not have suffered the significant left eye vision loss with which she lives today.

57.     The failure of the Emergency Department of Beth Israel Deaconess Hospital – Plymouth, Inc. and its agents, servants, and/or employees to provide for an appropriate medical screening examination to determine whether or not an emergency medical condition existed for Maria Eduarda Gavio Silva on 3/6/23 constituted a violation of the Emergency Medical Treatment and Active Labor Act ("EMTALA").

58.     To a reasonable degree of medical certainty, as a direct result of the EMTALA violation of the Emergency Department of Beth Israel Deaconess Hospital – Plymouth, Inc. and its agents, servants, and/or employees as set for the above, Maria Eduarda Gavio Silva suffered a significant delay in the diagnosis and treatment of her optic neuritis resulting in left eye vision loss. Had the Emergency Department of Beth Israel Deaconess Hospital – Plymouth, Inc. and its agents, servants, and/or employees rendered care and treatment in compliance with EMTALA, Maria would have been medically screened, it would have been determined that an emergency medical condition existed as defined by 42 U.S.C. §1395dd(e)(1), she would have been evaluated by ophthalmology on an emergent basis on 3/6/23, her optic neuritis would have been diagnosed and treated with IV steroids on or around 3/6/23, and more likely than not, she would not have suffered the significant left eye vision loss with which she lives today.

59.     As a direct result of the substandard care and treatment rendered to Maria Eduarda Gavio Silva by NP O'Neil, Dr. Cook, Dr. Nguyen, Nurse Heffernan, and the agents, servants and/or employees of Boston Medical Center Corp., Maria suffered permanent injury.

60.     As a direct result of the substandard care and treatment rendered to to Maria Eduarda Gavio Silva and the EMTALA violation of the Emergency Department of Beth Israel Deaconess Hospital – Plymouth, Inc. and its agents, servants and/or employees for Maria Eduarda Gavio Silva on 3/6/23, Maria suffered permanent injury including but not limited to significant vision loss.

## Count I.

1.  The plaintiff, Maria Eduarda Gavio Silva, is a minor who brings this action through her mother and next friend, Priscila Galhardo Dos Santos, a resident of Hanover, Plymouth County, Massachusetts.

2.  The defendant, Quindelyn Cook, M.D., was at all times relevant to this Complaint a physician licensed to practice her profession in the Commonwealth of Massachusetts.

3.  At all times relevant to this Complaint, the defendant, Quindelyn Cook, M.D., represented and held herself out to be a physician, skilled in the treatment of various illnesses and conditions and, in particular, represented to the plaintiff that she was knowledgeable, competent, and qualified to diagnose and treat the plaintiff's condition on or about 3/10/23.

4.  On or about 3/10/23, the plaintiff submitted herself to the care and treatment of the defendant, Quindelyn Cook, M.D., who negligently, carelessly, and without regard for the plaintiff's health and well-being, treated the plaintiff in a manner resulting in the plaintiff's severe personal injuries.

5. The injuries sustained by the plaintiff, Maria Eduarda Gavio Silva, were the direct and proximate result of the carelessness, unskillfulness, negligence and improper care and treatment by the defendant, Quindelyn Cook, M.D., including, but not limited to the following:

   a. Defendant's misrepresentations to the plaintiff that she was knowledgeable, skillful, and competent to diagnose and treat the plaintiff's medical condition on or about 3/10/23;

   b. Defendant's failure to adequately and properly diagnose the plaintiff's medical condition on or about 3/10/23, and her failure to prescribe proper and timely treatment for said condition;

   c. Defendant's failure to recognize, or have the knowledge to recognize her inability and lack of skill to diagnose and treat the plaintiff, when the defendant knew or should have known in the exercise of due care, the foreseeable consequences of her inability and failure to properly and skillfully provide the plaintiff with acceptable medical and diagnostic services;

   d. Defendant's failure to possess or negligent failure to exercise that degree of skill, training, and care as is possessed and exercised by average qualified members of the medical profession practicing her specialty; and

   e. Defendant's failure to inform and to warn of the risks involved in or associated with the plaintiff's condition and failure to inform and to warn about the treatment of said condition.

6. As a direct and proximate result of the negligence, carelessness, and unskillfulness of the defendant, Quindelyn Cook, M.D., the plaintiff, Maria Eduarda Gavio Silva, was caused to sustain severe and permanent personal injuries; has incurred and will continue to incur great expense for her medical, surgical, and hospital care and treatment; has suffered and will continue to suffer great pain of body and anguish of mind; has been and will continue to be hospitalized; has been and will continue to be unable to pursue normal activities; and her ability to enjoy life has been permanently adversely affected.

   WHEREFORE, the plaintiff, Maria Eduarda Gavio Silva, prays judgment against the defendant, Quindelyn Cook, M.D., in an amount which is just and appropriate to compensate her for her injuries, together with interest and costs.

## Count II.

1. The plaintiff, Maria Eduarda Gavio Silva, repeats and reavers fully herein Paragraphs One through Five of Count I of this Complaint as if each were set forth here in its entirety.

2. On or about 3/10/23, the defendant, Quindelyn Cook, M.D., contracted with the plaintiff to provide professional services related to the plaintiff's medical care and treatment.

3. The defendant, Quindelyn Cook, M.D., expressly and impliedly warranted to the plaintiff that she would perform and render said professional services in accordance with accepted standards for

the practice of medicine, and that she would possess and exercise that degree of skill and care possessed and exercised by the average qualified members of the medical profession practicing her specialty.

4. On or about 3/10/23, the defendant, Quindelyn Cook, M.D., breached her express and implied warranties by failing to perform and render professional services in accordance with accepted standards for the practice of medicine, and by failing to possess and exercise that degree of skill and care possessed and exercised by the average qualified members of the medical profession practicing her specialty.

5. As a direct and proximate result of the defendant, Quindelyn Cook, M.D.'s breach of express and implied warranties, the plaintiff, Maria Eduarda Gavio Silva, was caused to sustain severe and permanent personal injuries; has incurred and will continue to incur great expense for her medical, surgical, and hospital care and treatment; has suffered and will continue to suffer great pain of body and anguish of mind; has been and will continue to be hospitalized; has been and will continue to be unable to pursue normal activities; and her ability to enjoy life has been permanently adversely affected.

WHEREFORE, the plaintiff, Maria Eduarda Gavio Silva, prays judgment against the defendant, Quindelyn Cook, M.D., in an amount which is just and appropriate to compensate her for her injuries, together with interest and costs.

## Count III.

1. The plaintiff, Maria Eduarda Gavio Silva, repeats and reavers fully herein Paragraphs One through Five of Count I and Paragraphs One through Four of Count II of this Complaint as if each were set forth here in its entirety.

2. On or about 3/10/23, average qualified members of the medical profession practicing the defendant's specialty knew or should have known of the risks, potential consequences and alternatives to the defendant's choice of treatment of the plaintiff.

3. On or about 3/10/23, the defendant, Quindelyn Cook, M.D., knew or should have known of the risks, potential consequences and alternatives to the defendant's choice of treatment of the plaintiff.

4. On or about 3/10/23, the defendant, Quindelyn Cook, M.D., did not inform the plaintiff of the alternatives to and risks and potential consequences of the defendant's choice of treatment of the plaintiff.

5. If the defendant, Quindelyn Cook, M.D., had informed the plaintiff of the alternatives to and risks and potential consequences of the defendant's choice of treatment of the plaintiff, neither the plaintiff nor a reasonable person in her position would have elected the defendant's choice of treatment.

6. The alternatives to and the risks and potential consequences of the defendant's choice of treatment were material to a decision by the plaintiff and a reasonable person in her position as to whether to undergo the defendant's choice of treatment.

7. As a direct and proximate result of the defendant, Quindelyn Cook, M.D.'s failure to inform the plaintiff of the alternatives to and risks and potential consequences of the defendant's treatment, the plaintiff, Maria Eduarda Gavio Silva, was caused to sustain severe and permanent personal injuries; has incurred and will continue to incur great expense for her medical, surgical, and hospital care and treatment; has suffered and will continue to suffer great pain of body and anguish of mind; has been and will continue to be hospitalized; has been and will continue to be unable to pursue normal activities; and her ability to enjoy life has been permanently adversely affected.

WHEREFORE, the plaintiff, Maria Eduarda Gavio Silva, prays judgment against the defendant, Quindelyn Cook, M.D., in an amount which is just and appropriate to compensate her for her injuries, together with interest and costs.

## Count IV.

1. The plaintiff, Maria Eduarda Gavio Silva, repeats and reavers fully herein Paragraphs One through Five of Count I, Paragraphs One through Four of Count II and Paragraphs One through Six of Count III of this Complaint as if each were set forth here in its entirety.

2. As a direct and proximate result of the defendant, Quindelyn Cook, M.D.'s negligence, breach of warranties and failure to obtain informed consent, the plaintiff, Maria Eduarda Gavio Silva, has suffered and will continue to suffer severe emotional distress resulting in substantial physical injury.

WHEREFORE, the plaintiff, Maria Eduarda Gavio Silva, prays judgment against the defendant, Quindelyn Cook, M.D., in an amount which is just and appropriate to compensate her for her injuries, together with interest and costs.

## Count V.

1. The plaintiff, Maria Eduarda Gavio Silva, repeats and reavers fully herein Paragraphs One through Five of Count I, Paragraphs One through Four of Count II and Paragraphs One through Six of Count III of this Complaint as if each were set forth here in its entirety.

2. As a direct and proximate result of the defendant, Quindelyn Cook, M.D.'s negligence, breach of warranties and failure to obtain informed consent, the plaintiff, Maria Eduarda Gavio Silva, has incurred and will continue to incur great expense for her medical, surgical and hospital care and treatment.

WHEREFORE, the plaintiff, Maria Eduarda Gavio Silva, prays judgment against the defendant, Quindelyn Cook, M.D., in an amount which is just and appropriate to compensate her for her injuries, together with interest and costs.

## Count VI.

1. The plaintiff, Maria Eduarda Gavio Silva, is a minor who brings this action through her mother and next friend, Priscila Galhardo Dos Santos, a resident of Hanover, Plymouth County, Massachusetts.

2. The defendant, Christine Naoum Heffernan, R.N., was at all times relevant to this Complaint a nurse licensed to practice her profession in the Commonwealth of Massachusetts.

3. At all times relevant to this Complaint, the defendant Christine Naoum Heffernan, R.N., represented and held himself out to be a physician, skilled in the treatment of various illnesses and conditions and, in particular, represented to the plaintiff that she was knowledgeable, competent, and qualified to diagnose and treat the plaintiff's condition on or about 3/6/23.

4. On or about 3/6/23, the plaintiff submitted herself to the care and treatment of the defendant, Christine Naoum Heffernan, R.N., who negligently, carelessly, and without regard for the plaintiff's health and well-being, treated the plaintiff in a manner resulting in the plaintiff's severe personal injuries.

5. The injuries sustained by the plaintiff, Maria Eduarda Gavio Silva, were the direct and proximate result of the carelessness, unskillfulness, negligence and improper care and treatment by the defendant, Christine Naoum Heffernan, R.N., including, but not limited to the following:

    a. Defendant's misrepresentations to the plaintiff that she was knowledgeable, skillful, and competent to diagnose and treat the plaintiff's medical condition on or about 3/6/23;

    b. Defendant's failure to adequately and properly diagnose the plaintiff's medical condition on or about 3/6/23, and her failure to prescribe proper and timely treatment for said condition;

    c. Defendant's failure to recognize, or have the knowledge to recognize her inability and lack of skill to diagnose and treat the plaintiff, when the defendant knew or should have known in the exercise of due care, the foreseeable consequences of his inability and failure to properly and skillfully provide the plaintiff with acceptable medical and diagnostic services;

    d. Defendant's failure to possess or negligent failure to exercise that degree of skill, training, and care as is possessed and exercised by average qualified members of the medical profession practicing her specialty; and

    e. Defendant's failure to inform and to warn of the risks involved in or associated with the plaintiff's condition and failure to inform and to warn about the treatment of said condition.

6. As a direct and proximate result of the negligence, carelessness, and unskillfulness of the defendant, Christine Naoum Heffernan, R.N., the plaintiff, Maria Eduarda Gavio Silva, was caused to sustain severe and permanent personal injuries; has incurred and will continue to incur

great expense for her medical, surgical, and hospital care and treatment; has suffered and will continue to suffer great pain of body and anguish of mind; has been and will continue to be hospitalized; has been and will continue to be unable to pursue normal activities; and her ability to enjoy life has been permanently adversely affected.

WHEREFORE, the plaintiff, Maria Eduarda Gavio Silva, prays judgment against the defendant, Christine Naoum Heffernan, R.N., in an amount which is just and appropriate to compensate her for her injuries, together with interest and costs.

## Count VII.

1. The plaintiff, Maria Eduarda Gavio Silva, repeats and reavers fully herein Paragraphs One through Five of Count VI of this Complaint as if each were set forth here in its entirety.

2. On or about 3/6/23, the defendant, Christine Naoum Heffernan, R.N., contracted with the plaintiff to provide professional services related to the plaintiff's medical care and treatment.

3. The defendant, Christine Naoum Heffernan, R.N., expressly and impliedly warranted to the plaintiff that she would perform and render said professional services in accordance with accepted standards for the practice of medicine, and that she would possess and exercise that degree of skill and care possessed and exercised by the average qualified members of the medical profession practicing her specialty.

4. On or about 3/6/23, the defendant, Christine Naoum Heffernan, R.N., breached her express and implied warranties by failing to perform and render professional services in accordance with accepted standards for the practice of medicine, and by failing to possess and exercise that degree of skill and care possessed and exercised by the average qualified members of the medical profession practicing her specialty.

5. As a direct and proximate result of the defendant, Christine Naoum Heffernan, R.N.'s breach of express and implied warranties, the plaintiff, Maria Eduarda Gavio Silva, was caused to sustain severe and permanent personal injuries; has incurred and will continue to incur great expense for her medical, surgical, and hospital care and treatment; has suffered and will continue to suffer great pain of body and anguish of mind; has been and will continue to be hospitalized; has been and will continue to be unable to pursue normal activities; and her ability to enjoy life has been permanently adversely affected.

WHEREFORE, the plaintiff, Maria Eduarda Gavio Silva, prays judgment against the defendant, Christine Naoum Heffernan, R.N., in an amount which is just and appropriate to compensate her for her injuries, together with interest and costs.

## Count VIII.

1. The plaintiff, Maria Eduarda Gavio Silva, repeats and reavers fully herein Paragraphs One through Five of Count VI and Paragraphs One through Four of Count VII of this Complaint as if each were set forth here in its entirety.

2. On or about 3/6/23, average qualified members of the medical profession practicing the defendant's specialty knew or should have known of the risks, potential consequences and alternatives to the defendant's choice of treatment of the plaintiff.

3. On or about 3/6/23, the defendant, Christine Naoum Heffernan, R.N., knew or should have known of the risks, potential consequences and alternatives to the defendant's choice of treatment of the plaintiff.

4. On or about 3/6/23, the defendant, Christine Naoum Heffernan, R.N., did not inform the plaintiff of the alternatives to and risks and potential consequences of the defendant's choice of treatment of the plaintiff.

5. If the defendant, Christine Naoum Heffernan, R.N., had informed the plaintiff of the alternatives to and risks and potential consequences of the defendant's choice of treatment of the plaintiff, neither the plaintiff nor a reasonable person in her position would have elected the defendant's choice of treatment.

6. The alternatives to and the risks and potential consequences of the defendant's choice of treatment were material to a decision by the plaintiff and a reasonable person in her position as to whether to undergo the defendant's choice of treatment.

7. As a direct and proximate result of the defendant, Christine Naoum Heffernan, R.N.'s failure to inform the plaintiff of the alternatives to and risks and potential consequences of the defendant's treatment, the plaintiff, Maria Eduarda Gavio Silva, was caused to sustain severe and permanent personal injuries; has incurred and will continue to incur great expense for her medical, surgical, and hospital care and treatment; has suffered and will continue to suffer great pain of body and anguish of mind; has been and will continue to be hospitalized; has been and will continue to be unable to pursue normal activities; and her ability to enjoy life has been permanently adversely affected.

WHEREFORE, the plaintiff, Maria Eduarda Gavio Silva, prays judgment against the defendant, Christine Naoum Heffernan, R.N., in an amount which is just and appropriate to compensate her for her injuries, together with interest and costs.

## Count IX.

1. The plaintiff, Maria Eduarda Gavio Silva, repeats and reavers fully herein Paragraphs One through Five of Count VI, Paragraphs One through Four of Count VII and Paragraphs One through Six of Count VIII of this Complaint as if each were set forth here in its entirety.

2. As a direct and proximate result of the defendant, Christine Naoum Heffernan, R.N.'s negligence, breach of warranties and failure to obtain informed consent, the plaintiff, Maria Eduarda Gavio Silva, has suffered and will continue to suffer severe emotional distress resulting in substantial physical injury.

WHEREFORE, the plaintiff, Maria Eduarda Gavio Silva, prays judgment against the defendant, Christine Naoum Heffernan, R.N., in an amount which is just and appropriate to compensate her for her injuries, together with interest and costs.

## Count X.

1. The plaintiff, Maria Eduarda Gavio Silva, repeats and reavers fully herein Paragraphs One through Five of Count VI, Paragraphs One through Four of Count VII and Paragraphs One through Six of Count VIII of this Complaint as if each were set forth here in its entirety.

2. As a direct and proximate result of the defendant, Christine Naoum Heffernan, R.N.'s negligence, breach of warranties and failure to obtain informed consent, the plaintiff, Maria Eduarda Gavio Silva, has incurred and will continue to incur great expense for her medical, surgical and hospital care and treatment.

WHEREFORE, the plaintiff, Maria Eduarda Gavio Silva, prays judgment against the defendant, Christine Naoum Heffernan, R.N., in an amount which is just and appropriate to compensate her for her injuries, together with interest and costs.

## Count XI.

1. The plaintiff, Maria Eduarda Gavio Silva, is a minor who brings this action through her mother and next friend, Priscila Galhardo Dos Santos, a resident of Hanover, Plymouth County, Massachusetts.

2. The defendant, Alan Nguyen, M.D., was at all times relevant to this Complaint a physician licensed to practice his profession in the Commonwealth of Massachusetts.

3. At all times relevant to this Complaint, the defendant, Alan Nguyen, M.D., represented and held himself out to be a physician, skilled in the treatment of various illnesses and conditions and, in particular, represented to the plaintiff that she was knowledgeable, competent, and qualified to diagnose and treat the plaintiff's condition on or about 3/6/23.

4. On or about 3/6/23, the plaintiff submitted herself to the care and treatment of the defendant, Alan Nguyen, M.D., who negligently, carelessly, and without regard for the plaintiff's health and well-being, treated the plaintiff in a manner resulting in the plaintiff's severe personal injuries.

5. The injuries sustained by the plaintiff, Maria Eduarda Gavio Silva, were the direct and proximate result of the carelessness, unskillfulness, negligence and improper care and treatment by the defendant, Alan Nguyen, M.D., including, but not limited to the following:

   a. Defendant's misrepresentations to the plaintiff that he was knowledgeable, skillful, and competent to diagnose and treat the plaintiff's medical condition on or about 3/6/23;

   b. Defendant's failure to adequately and properly diagnose the plaintiff's medical condition on or about 3/6/23, and her failure to prescribe proper and timely treatment for said condition;

c. Defendant's failure to recognize, or have the knowledge to recognize his inability and lack of skill to diagnose and treat the plaintiff, when the defendant knew or should have known in the exercise of due care, the foreseeable consequences of his inability and failure to properly and skillfully provide the plaintiff with acceptable medical and diagnostic services;

d. Defendant's failure to possess or negligent failure to exercise that degree of skill, training, and care as is possessed and exercised by average qualified members of the medical profession practicing his specialty; and

e. Defendant's failure to inform and to warn of the risks involved in or associated with the plaintiff's condition and failure to inform and to warn about the treatment of said condition.

6. As a direct and proximate result of the negligence, carelessness, and unskillfulness of the defendant, Alan Nguyen, M.D., the plaintiff, Maria Eduarda Gavio Silva, was caused to sustain severe and permanent personal injuries; has incurred and will continue to incur great expense for her medical, surgical, and hospital care and treatment; has suffered and will continue to suffer great pain of body and anguish of mind; has been and will continue to be hospitalized; has been and will continue to be unable to pursue normal activities; and her ability to enjoy life has been permanently adversely affected.

WHEREFORE, the plaintiff, Maria Eduarda Gavio Silva, prays judgment against the defendant, Alan Nguyen, M.D., in an amount which is just and appropriate to compensate her for her injuries, together with interest and costs.

## Count XII.

1. The plaintiff, Maria Eduarda Gavio Silva, repeats and reavers fully herein Paragraphs One through Five of Count XI of this Complaint as if each were set forth here in its entirety.

2. On or about 3/6/23, the defendant, Alan Nguyen, M.D., contracted with the plaintiff to provide professional services related to the plaintiff's medical care and treatment.

3. The defendant, Alan Nguyen, M.D., expressly and impliedly warranted to the plaintiff that he would perform and render said professional services in accordance with accepted standards for the practice of medicine, and that he would possess and exercise that degree of skill and care possessed and exercised by the average qualified members of the medical profession practicing his specialty.

4. On or about 3/6/23, the defendant, Alan Nguyen, M.D., breached his express and implied warranties by failing to perform and render professional services in accordance with accepted standards for the practice of medicine, and by failing to possess and exercise that degree of skill and care possessed and exercised by the average qualified members of the medical profession practicing his specialty.

19

5. As a direct and proximate result of the defendant, Alan Nguyen, M.D.'s breach of express and implied warranties, the plaintiff, Maria Eduarda Gavio Silva, was caused to sustain severe and permanent personal injuries; has incurred and will continue to incur great expense for her medical, surgical, and hospital care and treatment; has suffered and will continue to suffer great pain of body and anguish of mind; has been and will continue to be hospitalized; has been and will continue to be unable to pursue normal activities; and her ability to enjoy life has been permanently adversely affected.

WHEREFORE, the plaintiff, Maria Eduarda Gavio Silva, prays judgment against the defendant, Alan Nguyen, M.D., in an amount which is just and appropriate to compensate her for her injuries, together with interest and costs.

## Count XIII.

1. The plaintiff, Maria Eduarda Gavio Silva, repeats and reavers fully herein Paragraphs One through Five of Count XI and Paragraphs One through Four of Count XII of this Complaint as if each were set forth here in its entirety.

2. On or about 3/6/23, average qualified members of the medical profession practicing the defendant's specialty knew or should have known of the risks, potential consequences and alternatives to the defendant's choice of treatment of the plaintiff.

3. On or about 3/6/23, the defendant, Alan Nguyen, M.D., knew or should have known of the risks, potential consequences and alternatives to the defendant's choice of treatment of the plaintiff.

4. On or about 3/6/23, the defendant, Denise Zwahlen, PA, did not inform the plaintiff of the alternatives to and risks and potential consequences of the defendant's choice of treatment of the plaintiff.

5. If the defendant, Alan Nguyen, M.D., had informed the plaintiff of the alternatives to and risks and potential consequences of the defendant's choice of treatment of the plaintiff, neither the plaintiff nor a reasonable person in her position would have elected the defendant's choice of treatment.

6. The alternatives to and the risks and potential consequences of the defendant's choice of treatment were material to a decision by the plaintiff and a reasonable person in her position as to whether to undergo the defendant's choice of treatment.

7. As a direct and proximate result of the defendant, Alan Nguyen, M.D.'s failure to inform the plaintiff of the alternatives to and risks and potential consequences of the defendant's treatment, the plaintiff, Maria Eduarda Gavio Silva, was caused to sustain severe and permanent personal injuries; has incurred and will continue to incur great expense for her medical, surgical, and hospital care and treatment; has suffered and will continue to suffer great pain of body and anguish of mind; has been and will continue to be hospitalized; has been and will continue to be unable to pursue normal activities; and her ability to enjoy life has been permanently adversely affected.

WHEREFORE, the plaintiff, Maria Eduarda Gavio Silva, prays judgment against the defendant, Alan Nguyen, M.D., in an amount which is just and appropriate to compensate her for her injuries, together with interest and costs.

## Count XIV.

1. The plaintiff, Maria Eduarda Gavio Silva, repeats and reavers fully herein Paragraphs One through Five of Count XI, Paragraphs One through Four of Count XII and Paragraphs One through Six of Count XIII of this Complaint as if each were set forth here in its entirety.

2. As a direct and proximate result of the defendant, Alan Nguyen, M.D.'s negligence, breach of warranties and failure to obtain informed consent, the plaintiff, Maria Eduarda Gavio Silva, has suffered and will continue to suffer severe emotional distress resulting in substantial physical injury.

WHEREFORE, the plaintiff, Maria Eduarda Gavio Silva, prays judgment against the defendant, Alan Nguyen, M.D., in an amount which is just and appropriate to compensate her for her injuries, together with interest and costs.

## Count XV.

1. The plaintiff, Maria Eduarda Gavio Silva, repeats and reavers fully herein Paragraphs One through Five of Count XI, Paragraphs One through Four of Count XII and Paragraphs One through Six of Count XIII of this Complaint as if each were set forth here in its entirety.

2. As a direct and proximate result of the defendant, Alan Nguyen, M.D.'s negligence, breach of warranties and failure to obtain informed consent, the plaintiff, Maria Eduarda Gavio Silva, has incurred and will continue to incur great expense for her medical, surgical and hospital care and treatment.

WHEREFORE, the plaintiff, Maria Eduarda Gavio Silva, prays judgment against the defendant, Alan Nguyen, M.D., in an amount which is just and appropriate to compensate her for her injuries, together with interest and costs.

## Count XVI.

1. The plaintiff, Maria Eduarda Gavio Silva, is a minor who brings this action through her mother and next friend, Priscila Galhardo Dos Santos, a resident of Hanover, Plymouth County, Massachusetts.

2. The defendant, Cindy O'Neal, FNP-C, was at all times relevant to this Complaint a nurse practitioner licensed to practice her profession in the Commonwealth of Massachusetts.

3. At all times relevant to this Complaint, the defendant, Cindy O'Neal, FNP-C, represented and held herself out to be a nurse practitioner, skilled in the treatment of various illnesses and conditions and, in particular, represented to the plaintiff that she was knowledgeable, competent, and qualified to diagnose and treat the plaintiff's condition on or about 3/7/23.

4. On or about 3/7/23, the plaintiff submitted herself to the care and treatment of the defendant, Cindy O'Neal, FNP-C, who negligently, carelessly, and without regard for the plaintiff's health and well-being, treated the plaintiff in a manner resulting in the plaintiff's severe personal injuries.

5. The injuries sustained by the plaintiff, Maria Eduarda Gavio Silva, were the direct and proximate result of the carelessness, unskillfulness, negligence and improper care and treatment by the defendant, Cindy O'Neal, FNP-C, including, but not limited to the following:

    a. Defendant's misrepresentations to the plaintiff that she was knowledgeable, skillful, and competent to diagnose and treat the plaintiff's medical condition on or about 3/7/23;

    b. Defendant's failure to adequately and properly diagnose the plaintiff's medical condition on or about 3/7/23, and her failure to prescribe proper and timely treatment for said condition;

    c. Defendant's failure to recognize, or have the knowledge to recognize her inability and lack of skill to diagnose and treat the plaintiff, when the defendant knew or should have known in the exercise of due care, the foreseeable consequences of her inability and failure to properly and skillfully provide the plaintiff with acceptable medical and diagnostic services;

    d. Defendant's failure to possess or negligent failure to exercise that degree of skill, training, and care as is possessed and exercised by average qualified members of the medical profession practicing her specialty; and

    e. Defendant's failure to inform and to warn of the risks involved in or associated with the plaintiff's condition and failure to inform and to warn about the treatment of said condition.

6. As a direct and proximate result of the negligence, carelessness, and unskillfulness of the defendant, Cindy O'Neal, FNP-C, the plaintiff, Maria Eduarda Gavio Silva, was caused to sustain severe and permanent personal injuries; has incurred and will continue to incur great expense for her medical, surgical, and hospital care and treatment; has suffered and will continue to suffer great pain of body and anguish of mind; has been and will continue to be hospitalized; has been and will continue to be unable to pursue normal activities; and her ability to enjoy life has been permanently adversely affected.

       WHEREFORE, the plaintiff, Maria Eduarda Gavio Silva, prays judgment against the defendant, Cindy O'Neal, FNP-C, in an amount which is just and appropriate to compensate her for her injuries, together with interest and costs.

## Count XVII.

1. The plaintiff, Maria Eduarda Gavio Silva, repeats and reavers fully herein Paragraphs One through Five of Count XVI of this Complaint as if each were set forth here in its entirety.

2. On or about 3/7/23, the defendant, Cindy O'Neal, FNP-C, contracted with the plaintiff to provide professional services related to the plaintiff's medical care and treatment.

3. The defendant, Cindy O'Neal, FNP-C, expressly and impliedly warranted to the plaintiff that she would perform and render said professional services in accordance with accepted standards for the practice of medicine, and that she would possess and exercise that degree of skill and care possessed and exercised by the average qualified members of the medical profession practicing her specialty.

4. On or about 3/7/23, the defendant, Cindy O'Neal, FNP-C, breached her express and implied warranties by failing to perform and render professional services in accordance with accepted standards for the practice of medicine, and by failing to possess and exercise that degree of skill and care possessed and exercised by the average qualified members of the medical profession practicing her specialty.

5. As a direct and proximate result of the defendant, Cindy O'Neal, FNP-C's breach of express and implied warranties, the plaintiff, Maria Eduarda Gavio Silva, was caused to sustain severe and permanent personal injuries; has incurred and will continue to incur great expense for her medical, surgical, and hospital care and treatment; has suffered and will continue to suffer great pain of body and anguish of mind; has been and will continue to be hospitalized; has been and will continue to be unable to pursue normal activities; and her ability to enjoy life has been permanently adversely affected.

WHEREFORE, the plaintiff, Maria Eduarda Gavio Silva, prays judgment against the defendant, Cindy O'Neal, FNP-C, in an amount which is just and appropriate to compensate her for her injuries, together with interest and costs.

## Count XVIII.

1. The plaintiff, Maria Eduarda Gavio Silva, repeats and reavers fully herein Paragraphs One through Five of Count XVI and Paragraphs One through Four of Count XVII of this Complaint as if each were set forth here in its entirety.

2. On or about 3/7/23, average qualified members of the medical profession practicing the defendant's specialty knew or should have known of the risks, potential consequences and alternatives to the defendant's choice of treatment of the plaintiff.

3. On or about 3/7/23, the defendant, Cindy O'Neal, FNP-C, knew or should have known of the risks, potential consequences and alternatives to the defendant's choice of treatment of the plaintiff.

4. On or about 3/7/23, the defendant, Cindy O'Neal, FNP-C, did not inform the plaintiff of the alternatives to and risks and potential consequences of the defendant's choice of treatment of the plaintiff.

5. If the defendant, Cindy O'Neal, FNP-C, had informed the plaintiff of the alternatives to and risks and potential consequences of the defendant's choice of treatment of the plaintiff, neither the

plaintiff nor a reasonable person in her position would have elected the defendant's choice of treatment.

6. The alternatives to and the risks and potential consequences of the defendant's choice of treatment were material to a decision by the plaintiff and a reasonable person in her position as to whether to undergo the defendant's choice of treatment.

7. As a direct and proximate result of the defendant, Cindy O'Neal, FNP-C's failure to inform the plaintiff of the alternatives to and risks and potential consequences of the defendant's treatment, the plaintiff, Maria Eduarda Gavio Silva, was caused to sustain severe and permanent personal injuries; has incurred and will continue to incur great expense for her medical, surgical, and hospital care and treatment; has suffered and will continue to suffer great pain of body and anguish of mind; has been and will continue to be hospitalized; has been and will continue to be unable to pursue normal activities; and her ability to enjoy life has been permanently adversely affected.

WHEREFORE, the plaintiff, Maria Eduarda Gavio Silva, prays judgment against the defendant, Cindy O'Neal, FNP-C, in an amount which is just and appropriate to compensate her for her injuries, together with interest and costs.

## Count XIX.

1. The plaintiff, Maria Eduarda Gavio Silva, repeats and reavers fully herein Paragraphs One through Five of Count XVI, Paragraphs One through Four of Count XVII and Paragraphs One through Six of Count XVIII of this Complaint as if each were set forth here in its entirety.

2. As a direct and proximate result of the defendant, Cindy O'Neal, FNP-C 's negligence, breach of warranties and failure to obtain informed consent, the plaintiff, Maria Eduarda Gavio Silva, has suffered and will continue to suffer severe emotional distress resulting in substantial physical injury.

WHEREFORE, the plaintiff, Maria Eduarda Gavio Silva, prays judgment against the defendant, Cindy O'Neal, FNP-C, in an amount which is just and appropriate to compensate her for her injuries, together with interest and costs.

## Count XX.

1. The plaintiff, Maria Eduarda Gavio Silva, repeats and reavers fully herein Paragraphs One through Five of Count XVI, Paragraphs One through Four of Count XVII and Paragraphs One through Six of Count XVIII of this Complaint as if each were set forth here in its entirety.

2. As a direct and proximate result of the defendant, Cindy O'Neal, FNP-C's negligence, breach of warranties and failure to obtain informed consent, the plaintiff, Maria Eduarda Gavio Silva, has incurred and will continue to incur great expense for her medical, surgical and hospital care and treatment.

WHEREFORE, the plaintiff, Maria Eduarda Gavio Silva, prays judgment against the defendant, Cindy O'Neal, FNP-C, in an amount which is just and appropriate to compensate her for her injuries, together with interest and costs.

## Count XXI.

1. The plaintiff, Maria Eduarda Gavio Silva, is a minor who brings this action through her mother and next friend, Priscila Galhardo Dos Santos, a resident of Hanover, Plymouth County, Massachusetts.

1. The plaintiff repeats and reavers fully herein the facts and the allegations set forth in this Complaint as if each were set forth here in its entirety.

2. The defendant, the United States of America, is a public employer within the meaning of 28 U.S.C. §1346(b), 2671 et seq. and at all times herein operated Harbor Community Health Center – Plymouth, which is a federally funded health clinic that the U.S. Department of Health and Human Services has deemed eligible for protection under the Federal Tort Claims Act pursuant to 42 U.S.C. § 233.

3. Jurisdiction is based on 28 U.S.C. § 1346(b), the Federal Tort Claims Act.

4. All statutory conditions precedent to filing suit have been met.

5. The plaintiff did not discover, nor could she have reasonably discovered, in the exercise of reasonable diligence, the defendant's malpractice until after 3/11/23, which is less than two years from the presentment of her administrative tort claim on 2/26/25. All conditions precedent to filing this Complaint, including but not limited to, the exhaustion of administrative remedies under the Federal Torts Claim Act, 28 U.S.C. §§ 1346, 2671 et seq. have been satisfied.

6. At all times relevant to this Complaint, the defendant, the United States of America, by its agents, servants, or employees, represented and held itself out to be skilled in the treatment of various illnesses and conditions and, in particular, represented to the plaintiff that it was knowledgeable, competent, and qualified to diagnose and treat the plaintiff's condition on or about 3/7/23.

7. On or about 3/7/23, the plaintiff submitted herself to the care and treatment of the defendant, the United States of America, by its agents, servants, or employees, who negligently, carelessly, and without regard for the plaintiff's health and well-being, treated the plaintiff in a manner resulting in the plaintiff's severe personal injuries.

8. The injuries sustained by the plaintiff, Maria Eduarda Gavio Silva, were the direct and proximate result of the carelessness, unskillfulness, negligence and improper care and treatment by the defendant, the United States of America, by its agents, servants, or employees, including, but not limited to the following:

a.  Defendant's misrepresentations to the plaintiff that it was knowledgeable, skillful, and competent to diagnose and treat the plaintiff on or about 3/7/23.

b.  Defendant's failure to adequately and properly diagnose the plaintiff's medical condition on or about 3/7/23, and its failure to prescribe proper and timely treatment for said condition;

c.  Defendant's failure to recognize, or have the knowledge to recognize its inability and lack of skill to diagnose and treat the plaintiff, when the defendant knew or should have known in the exercise of due care, the foreseeable consequences of its inability and failure to properly and skillfully provide the plaintiff with acceptable medical and diagnostic services;

d.  Defendant's failure to possess or negligent failure to exercise that degree of skill, training, and care as is possessed and exercised by average qualified members of the medical profession practicing its specialty;

e.  Defendant's failure to inform and to warn of the risks involved in or associated with the plaintiff's condition and failure to inform and to warn about the treatment of said condition; and

f.  Defendant's failure to exercise reasonable care in hiring, supervising, employing and/or continuing to employ its agents, servants, or employees.

9.  As a direct and proximate result of the negligence, carelessness, and unskillfulness of the defendant, the United States of America, by its agents, servants, or employees, the plaintiff, Maria Eduarda Gavio Silva, was caused to sustain severe and permanent personal injuries; has incurred and will continue to incur great expense for her medical, surgical, and hospital care and treatment; has suffered and will continue to suffer great pain of body and anguish of mind; has been and will continue to be hospitalized; has been and will continue to be unable to pursue normal activities; and her ability to enjoy life has been permanently adversely affected.

WHEREFORE, the plaintiff, Maria Eduarda Gavio Silva, prays judgment against the defendant, the United States of America, in an amount which is just and appropriate to compensate her for her injuries, together with interest and costs.

## Count XXII.

1.  The plaintiff, Maria Eduarda Gavio Silva, repeats and reavers fully herein Paragraphs One through Ten of Count XXI of this Complaint as if each were set forth here in its entirety.

2.  The plaintiff repeats and reavers fully herein the facts and the allegations set forth in this Complaint as if each were set forth here in its entirety.

3.  On or about 3/7/23, the defendant, the United States of America, by its agents, servants, or employees, contracted with the plaintiff to provide professional services related to the plaintiff's medical care and treatment.

26

4. The defendant, the United States of America, by its agents, servants, or employees, expressly and impliedly warranted to the plaintiff that it would perform and render said professional services in accordance with accepted standards for the practice of medicine, and that it would possess and exercise that degree of skill and care possessed and exercised by the average qualified members of the medical profession practicing its specialty.

5. On or about 3/7/23, the defendant, the United States of America, by its agents, servants, or employees, breached its express and implied warranties by failing to perform and render professional services in accordance with accepted standards for the practice of medicine, and by failing to possess and exercise that degree of skill and care possessed and exercised by the average qualified members of the medical profession practicing its specialty.

6. The plaintiff did not discover, nor could she have reasonably discovered, in the exercise of reasonable diligence, the defendant's malpractice until after 3/11/23, which is less than two years from the presentment of her administrative tort claim on 2/26/25. All conditions precedent to filing this Complaint, including but not limited to, the exhaustion of administrative remedies under the Federal Torts Claim Act, 28 U.S.C. §§ 1346, 2671 et seq. have been satisfied.

7. As a direct and proximate result of the defendant, the United States of America, by its agents', servants', or employees' breach of express and implied warranties, the plaintiff, Maria Eduarda Gavio Silva, was caused to sustain severe and permanent personal injuries; has incurred and will continue to incur great expense for her medical, surgical, and hospital care and treatment; has suffered and will continue to suffer great pain of body and anguish of mind; has been and will continue to be hospitalized; has been and will continue to be unable to pursue normal activities; and her ability to enjoy life has been permanently adversely affected.

WHEREFORE, the plaintiff, Maria Eduarda Gavio Silva, prays judgment against the defendant, the United States of America, in an amount which is just and appropriate to compensate her for her injuries, together with interest and costs.

## Count XXIII.

1. The plaintiff, Maria Eduarda Gavio Silva, repeats and reavers fully herein Paragraphs One through Ten of Count XXI and Paragraphs One through Seven of Count XXII of this Complaint as if each were set forth here in its entirety.

2. The plaintiff repeats and reavers fully herein the facts and the allegations set forth in this Complaint as if each were set forth here in its entirety.

3. On or about 3/7/23, average qualified members of the medical profession practicing the defendant's specialty knew or should have known of the risks, potential consequences and alternatives to the defendant's choice of treatment of the plaintiff.

4. On or about 3/7/23, the defendant, the United States of America, by its agents, servants, or employees, knew or should have known of the risks, potential consequences and alternatives to the defendant's choice of treatment of the plaintiff.

5. On or about 3/7/23, the defendant, the United States of America, by its agents, servants, or employees, did not inform the plaintiff of the alternatives to and risks and potential consequences of the defendant's choice of treatment of the plaintiff.

6. If the defendant, the United States of America, by its agents, servants, or employees, had informed the plaintiff of the alternatives to and risks and potential consequences of the defendant's choice of treatment of the plaintiff, neither the plaintiff nor a reasonable person in her position would have elected the defendant's choice of treatment.

7. The alternatives to and the risks and potential consequences of the defendant's choice of treatment were material to a decision by the plaintiff and a reasonable person in her position as to whether to undergo the defendant's choice of treatment.

8. The plaintiff did not discover, nor could she have reasonably discovered, in the exercise of reasonable diligence, the defendant's malpractice until after 3/11/23, which is less than two years from the presentment of her administrative tort claim on 2/26/25. All conditions precedent to filing this Complaint, including but not limited to, the exhaustion of administrative remedies under the Federal Torts Claim Act, 28 U.S.C. §§ 1346, 2671 et seq. have been satisfied.

9. As a direct and proximate result of the defendant, the United States of America, by its agents', servants', or employees' failure to inform the plaintiff of the alternatives to and risks and potential consequences of the defendant's treatment, the plaintiff, Maria Eduarda Gavio Silva, was caused to sustain severe and permanent personal injuries; has incurred and will continue to incur great expense for her medical, surgical, and hospital care and treatment; has suffered and will continue to suffer great pain of body and anguish of mind; has been and will continue to be hospitalized; has been and will continue to be unable to pursue normal activities; and her ability to enjoy life has been permanently adversely affected.

   WHEREFORE, the plaintiff, Maria Eduarda Gavio Silva, prays judgment against the defendant, the United States of America, in an amount which is just and appropriate to compensate her for her injuries, together with interest and costs.

## Count XXIV.

1. The plaintiff, Maria Eduarda Gavio Silva, repeats and reavers fully herein Paragraphs One through Ten of Count XXI, Paragraphs One through Seven of Count XXII, and Paragraphs One through Nine of Count XXIII of this Complaint as if each were set forth here in its entirety.

2. The plaintiff did not discover, nor could she have reasonably discovered, in the exercise of reasonable diligence, the defendant's malpractice until after 3/11/23, which is less than two years from the presentment of her administrative tort claim on 2/26/25. All conditions precedent to filing this Complaint, including but not limited to, the exhaustion of administrative remedies under the Federal Torts Claim Act, 28 U.S.C. §§ 1346, 2671 et seq. have been satisfied.

3. As a direct and proximate result of the defendant, the United States of America, by its agents', servants', or employees' negligence, breach of warranties and failure to obtain informed consent, the plaintiff, Maria Eduarda Gavio Silva, has suffered and will continue to suffer severe emotional distress resulting in substantial physical injury.

WHEREFORE, the plaintiff, Maria Eduarda Gavio Silva, prays judgment against the defendant, the United States of America, in an amount which is just and appropriate to compensate her for her injuries, together with interest and costs.

## Count XXV.

1. The plaintiff, Maria Eduarda Gavio Silva, is a minor who brings this action through her mother and next friend, Priscila Galhardo Dos Santos, a resident of Hanover, Plymouth County, Massachusetts.

2. The plaintiff repeats and reavers fully herein the facts and the allegations set forth in this Complaint as if each were set forth here in its entirety.

3. The defendant, Boston Medical Center Corp. was at all times relevant to this complaint a corporation duly organized and existing under the laws of the Commonwealth of Massachusetts, with a principal office at 1 Boston Medical Center Place, Boston in Suffolk County, Massachusetts 02118.

4. At all times relevant to this Complaint, the defendant, Boston Medical Center Corp., by its agents, servants, or employees, represented and held itself out to be skilled in the treatment of various illnesses and conditions and, in particular, represented to the plaintiff that it was knowledgeable, competent, and qualified to diagnose and treat the plaintiff's condition on or about in March of 2023.

5. On or about March of 2023, the plaintiff submitted herself to the care and treatment of the defendant, Boston Medical Center Corp., by its agents, servants, or employees, who negligently, carelessly, and without regard for the plaintiff's health and well-being, treated the plaintiff in a manner resulting in the plaintiff's severe personal injuries.

6. The injuries sustained by the plaintiff, Maria Eduarda Gavio Silva, were the direct and proximate result of the carelessness, unskillfulness, negligence and improper care and treatment by the defendant, Boston Medical Center Corp., by its agents, servants, or employees, including, but not limited to the following:
   a. Defendant's misrepresentations to the plaintiff that it was knowledgeable, skillful, and competent to diagnose and treat the plaintiff on or about March of 2023.

   b. Defendant's failure to adequately and properly diagnose the plaintiff's medical condition on or about March of 2023, and its failure to prescribe proper and timely treatment for said condition;

29

c. Defendant's failure to recognize, or have the knowledge to recognize its inability and lack of skill to diagnose and treat the plaintiff, when the defendant knew or should have known in the exercise of due care, the foreseeable consequences of its inability and failure to properly and skillfully provide the plaintiff with acceptable medical and diagnostic services;

d. Defendant's failure to possess or negligent failure to exercise that degree of skill, training, and care as is possessed and exercised by average qualified members of the medical profession practicing its specialty;

e. Defendant's failure to inform and to warn of the risks involved in or associated with the plaintiff's condition and failure to inform and to warn about the treatment of said condition; and

f. Defendant's failure to exercise reasonable care in hiring, supervising, employing and/or continuing to employ its agents, servants, or employees.

7. As a direct and proximate result of the negligence, carelessness, and unskillfulness of the defendant, Boston Medical Center Corp., by its agents, servants, or employees, the plaintiff, Maria Eduarda Gavio Silva, was caused to sustain severe and permanent personal injuries; has incurred and will continue to incur great expense for her medical, surgical, and hospital care and treatment; has suffered and will continue to suffer great pain of body and anguish of mind; has been and will continue to be hospitalized; has been and will continue to be unable to pursue normal activities; and her ability to enjoy life has been permanently adversely affected.

WHEREFORE, the plaintiff, Maria Eduarda Gavio Silva, prays judgment against the defendant, Boston Medical Center Corp., in an amount which is just and appropriate to compensate her for her injuries, together with interest and costs.

## Count XXVI.

1. The plaintiff, Maria Eduarda Gavio Silva, repeats and reavers fully herein Paragraphs One through Ten of Count XXV of this Complaint as if each were set forth here in its entirety.

2. The plaintiff repeats and reavers fully herein the facts and the allegations set forth in this Complaint as if each were set forth here in its entirety.

3. On or about March of 2023, the defendant, Boston Medical Center Corp., by its agents, servants, or employees, contracted with the plaintiff to provide professional services related to the plaintiff's medical care and treatment.

4. The defendant, Boston Medical Center Corp., by its agents, servants, or employees, expressly and impliedly warranted to the plaintiff that it would perform and render said professional services in accordance with accepted standards for the practice of medicine, and that it would possess and exercise that degree of skill and care possessed and exercised by the average qualified members of the medical profession practicing its specialty.

5. On or about March of 2023, the defendant, Boston Medical Center Corp., by its agents, servants, or employees, breached its express and implied warranties by failing to perform and render professional services in accordance with accepted standards for the practice of medicine, and by failing to possess and exercise that degree of skill and care possessed and exercised by the average qualified members of the medical profession practicing its specialty.

6. As a direct and proximate result of the defendant, Boston Medical Center Corp., by its agents', servants', or employees' breach of express and implied warranties, the plaintiff, Maria Eduarda Gavio Silva, was caused to sustain severe and permanent personal injuries; has incurred and will continue to incur great expense for her medical, surgical, and hospital care and treatment; has suffered and will continue to suffer great pain of body and anguish of mind; has been and will continue to be hospitalized; has been and will continue to be unable to pursue normal activities; and her ability to enjoy life has been permanently adversely affected.

WHEREFORE, the plaintiff, Maria Eduarda Gavio Silva, prays judgment against the defendant, Boston Medical Center Corp., in an amount which is just and appropriate to compensate her for her injuries, together with interest and costs.

## Count XXVII.

1. The plaintiff, Maria Eduarda Gavio Silva, repeats and reavers fully herein Paragraphs One through Seven of Count XXV and Paragraphs One through Six of Count XXVI of this Complaint as if each were set forth here in its entirety.

2. The plaintiff repeats and reavers fully herein the facts and the allegations set forth in this Complaint as if each were set forth here in its entirety.

3. On or about March of 2023, average qualified members of the medical profession practicing the defendant's specialty knew or should have known of the risks, potential consequences and alternatives to the defendant's choice of treatment of the plaintiff.

4. On or about March of 2023, the defendant, Boston Medical Center Corp., by its agents, servants, or employees, knew or should have known of the risks, potential consequences and alternatives to the defendant's choice of treatment of the plaintiff.

5. On or about March of 2023, the defendant, Boston Medical Center Corp., by its agents, servants, or employees, did not inform the plaintiff of the alternatives to and risks and potential consequences of the defendant's choice of treatment of the plaintiff.

6. If the defendant, Boston Medical Center Corp., by its agents, servants, or employees, had informed the plaintiff of the alternatives to and risks and potential consequences of the defendant's choice of treatment of the plaintiff, neither the plaintiff nor a reasonable person in her position would have elected the defendant's choice of treatment.

7. The alternatives to and the risks and potential consequences of the defendant's choice of treatment were material to a decision by the plaintiff and a reasonable person in her position as to whether to undergo the defendant's choice of treatment.

8.  As a direct and proximate result of the defendant, Boston Medical Center Corp., by its agents', servants', or employees' failure to inform the plaintiff of the alternatives to and risks and potential consequences of the defendant's treatment, the plaintiff, Maria Eduarda Gavio Silva, was caused to sustain severe and permanent personal injuries; has incurred and will continue to incur great expense for her medical, surgical, and hospital care and treatment; has suffered and will continue to suffer great pain of body and anguish of mind; has been and will continue to be hospitalized; has been and will continue to be unable to pursue normal activities; and her ability to enjoy life has been permanently adversely affected.

WHEREFORE, the plaintiff, Maria Eduarda Gavio Silva, prays judgment against the defendant, Boston Medical Center Corp., in an amount which is just and appropriate to compensate her for her injuries, together with interest and costs.

## Count XXVIII.

1.  The plaintiff, Maria Eduarda Gavio Silva, repeats and reavers fully herein Paragraphs One through Seven of Count XXV, Paragraphs One through Seven of Count XXVI, and Paragraphs One through Eight of Count XXVII of this Complaint as if each were set forth here in its entirety.

2.  As a direct and proximate result of the defendant, Boston Medical Center Corp, by its agents', servants', or employees' negligence, breach of warranties and failure to obtain informed consent, the plaintiff, Maria Eduarda Gavio Silva, has suffered and will continue to suffer severe emotional distress resulting in substantial physical injury.

WHEREFORE, the plaintiff, Maria Eduarda Gavio Silva, prays judgment against the defendant, Boston Medical Center Corp., in an amount which is just and appropriate to compensate her for her injuries, together with interest and costs.

## Count XXIX.

1.  The plaintiff, Maria Eduarda Gavio Silva, is a minor who brings this action through her mother and next friend, Priscila Galhardo Dos Santos, a resident of Hanover, Plymouth County, Massachusetts.

2.  The plaintiff repeats and reavers fully herein the facts and the allegations set forth in this Complaint as if each were set forth here in its entirety.

3.  The defendant, Beth Israel Deaconess Hospital – Plymouth, Inc. was at all times relevant to this complaint a corporation duly organized and existing under the laws of the Commonwealth of Massachusetts, with a principal office at 275 Sandwich Street, Plymouth in Plymouth County, Massachusetts 02360.

4.  At all times relevant to this Complaint, the defendant, Beth Israel Deaconess Hospital – Plymouth, Inc. by its agents, servants, or employees, represented and held itself out to be skilled in the treatment of various illnesses and conditions and, in particular, represented to the

plaintiff that it was knowledgeable, competent, and qualified to diagnose and treat the plaintiff's condition on or about 3/6/23.

5. On or about 3/6/23, the plaintiff submitted herself to the care and treatment of the defendant, Beth Israel Deaconess Hospital – Plymouth, Inc., by its agents, servants, or employees, who negligently, carelessly, and without regard for the plaintiff's health and well-being, treated the plaintiff in a manner resulting in the plaintiff's severe personal injuries.

6. The injuries sustained by the plaintiff, Maria Eduarda Gavio Silva, were the direct and proximate result of the carelessness, unskillfulness, negligence and improper care and treatment by the defendant, Boston Medical Center Corp., by its agents, servants, or employees, including, but not limited to the following:

   a. Defendant's misrepresentations to the plaintiff that it was knowledgeable, skillful, and competent to diagnose and treat the plaintiff on or about 3/6/23.

   b. Defendant's failure to adequately and properly diagnose the plaintiff's medical condition on or about 3/6/23, and its failure to prescribe proper and timely treatment for said condition;

   c. Defendant's failure to recognize, or have the knowledge to recognize its inability and lack of skill to diagnose and treat the plaintiff, when the defendant knew or should have known in the exercise of due care, the foreseeable consequences of its inability and failure to properly and skillfully provide the plaintiff with acceptable medical and diagnostic services;

   d. Defendant's failure to possess or negligent failure to exercise that degree of skill, training, and care as is possessed and exercised by average qualified members of the medical profession practicing its specialty;

   e. Defendant's failure to inform and to warn of the risks involved in or associated with the plaintiff's condition and failure to inform and to warn about the treatment of said condition; and

   f. Defendant's failure to exercise reasonable care in hiring, supervising, employing and/or continuing to employ its agents, servants, or employees.

7. As a direct and proximate result of the negligence, carelessness, and unskillfulness of the defendant, Beth Israel Deaconess Hospital – Plymouth, Inc., by its agents, servants, or employees, the plaintiff, Maria Eduarda Gavio Silva, was caused to sustain severe and permanent personal injuries; has incurred and will continue to incur great expense for her medical, surgical, and hospital care and treatment; has suffered and will continue to suffer great pain of body and anguish of mind; has been and will continue to be hospitalized; has been and will continue to be unable to pursue normal activities; and her ability to enjoy life has been permanently adversely affected.

WHEREFORE, the plaintiff, Maria Eduarda Gavio Silva, prays judgment against the defendant, Beth Israel Deaconess Hospital – Plymouth, Inc., in an amount which is just and appropriate to compensate her for her injuries, together with interest and costs.

## Count XXX.

1. The plaintiff, Maria Eduarda Gavio Silva, repeats and reavers fully herein Paragraphs One through Seven of Count XXIX of this Complaint as if each were set forth here in its entirety.

2. The plaintiff repeats and reavers fully herein the facts and the allegations set forth in this Complaint as if each were set forth here in its entirety.

3. On or about 3/6/23, the defendant, Beth Israel Deaconess Hospital – Plymouth, Inc., by its agents, servants, or employees, contracted with the plaintiff to provide professional services related to the plaintiff's medical care and treatment.

4. The defendant, Beth Israel Deaconess Hospital – Plymouth, Inc., by its agents, servants, or employees, expressly and impliedly warranted to the plaintiff that it would perform and render said professional services in accordance with accepted standards for the practice of medicine, and that it would possess and exercise that degree of skill and care possessed and exercised by the average qualified members of the medical profession practicing its specialty.

5. On or about 3/6/23, the defendant, Beth Israel Deaconess Hospital – Plymouth, Inc., by its agents, servants, or employees, breached its express and implied warranties by failing to perform and render professional services in accordance with accepted standards for the practice of medicine, and by failing to possess and exercise that degree of skill and care possessed and exercised by the average qualified members of the medical profession practicing its specialty.

6. As a direct and proximate result of the defendant, Beth Israel Deaconess Hospital – Plymouth, Inc., by its agents', servants', or employees' breach of express and implied warranties, the plaintiff, Maria Eduarda Gavio Silva, was caused to sustain severe and permanent personal injuries; has incurred and will continue to incur great expense for her medical, surgical, and hospital care and treatment; has suffered and will continue to suffer great pain of body and anguish of mind; has been and will continue to be hospitalized; has been and will continue to be unable to pursue normal activities; and her ability to enjoy life has been permanently adversely affected.

WHEREFORE, the plaintiff, Maria Eduarda Gavio Silva, prays judgment against the defendant, Beth Israel Deaconess Hospital – Plymouth, Inc., in an amount which is just and appropriate to compensate her for her injuries, together with interest and costs.

## Count XXXI.

1. The plaintiff, Maria Eduarda Gavio Silva, repeats and reavers fully herein Paragraphs One through Seven of Count XXIX and Paragraphs One through Six of Count XXX of this Complaint as if each were set forth here in its entirety.

2.  The plaintiff repeats and reavers fully herein the facts and the allegations set forth in this Complaint as if each were set forth here in its entirety.

3.  On or about 3/6/23, average qualified members of the medical profession practicing the defendant's specialty knew or should have known of the risks, potential consequences and alternatives to the defendant's choice of treatment of the plaintiff.

4.  On or about 3/6/23, the defendant, Beth Israel Deaconess Hospital – Plymouth, Inc., by its agents, servants, or employees, knew or should have known of the risks, potential consequences and alternatives to the defendant's choice of treatment of the plaintiff.

5.  On or about 3/6/23, the defendant, Beth Israel Deaconess Hospital – Plymouth, Inc., by its agents, servants, or employees, did not inform the plaintiff of the alternatives to and risks and potential consequences of the defendant's choice of treatment of the plaintiff.

6.  If the defendant, Beth Israel Deaconess Hospital – Plymouth, Inc., by its agents, servants, or employees, had informed the plaintiff of the alternatives to and risks and potential consequences of the defendant's choice of treatment of the plaintiff, neither the plaintiff nor a reasonable person in her position would have elected the defendant's choice of treatment.

7.  The alternatives to and the risks and potential consequences of the defendant's choice of treatment were material to a decision by the plaintiff and a reasonable person in her position as to whether to undergo the defendant's choice of treatment.

8.  As a direct and proximate result of the defendant, Beth Israel Deaconess Hospital – Plymouth, Inc., by its agents', servants', or employees' failure to inform the plaintiff of the alternatives to and risks and potential consequences of the defendant's treatment, the plaintiff, Maria Eduarda Gavio Silva, was caused to sustain severe and permanent personal injuries; has incurred and will continue to incur great expense for her medical, surgical, and hospital care and treatment; has suffered and will continue to suffer great pain of body and anguish of mind; has been and will continue to be hospitalized; has been and will continue to be unable to pursue normal activities; and her ability to enjoy life has been permanently adversely affected.

WHEREFORE, the plaintiff, Maria Eduarda Gavio Silva, prays judgment against the defendant, Beth Israel Deaconess Hospital – Plymouth, Inc., in an amount which is just and appropriate to compensate her for her injuries, together with interest and costs.

## Count XXXII.

1.  The plaintiff, Maria Eduarda Gavio Silva, repeats and reavers fully herein Paragraphs One through Seven of Count XXIX, Paragraphs One through Seven of Count XXX, and Paragraphs One through Eight of Count XXXI of this Complaint as if each were set forth here in its entirety.

2. The plaintiff repeats and reavers fully herein the facts and the allegations set forth in this Complaint as if each were set forth here in its entirety.

3. The failure of the Emergency Department of Beth Israel Deaconess Hospital – Plymouth, Inc. and its agents, servants, and/or employees to provide for an appropriate medical screening examination to determine whether or not an emergency medical condition existed for Maria Eduarda Gavio Silva on 3/6/23 constituted a violation of the Emergency Medical Treatment and Active Labor Act ("EMTALA").

4. As a direct result of the EMTALA violation of the Emergency Department of Beth Israel Deaconess Hospital – Plymouth, Inc. and its agents, servants, and/or employees as set for the above, Maria Eduarda Gavio Silva suffered a significant delay in the diagnosis and treatment of her optic neuritis resulting in left eye vision loss. Had the Emergency Department of Beth Israel Deaconess Hospital – Plymouth, Inc. and its agents, servants, and/or employees rendered care and treatment in compliance with EMTALA, Maria would have been medically screened, it would have been determined that an emergency medical condition existed as defined by 42 U.S.C. §1395dd(e)(1), she would have been evaluated by ophthalmology on an emergent basis on 3/6/23, her optic neuritis would have been diagnosed and treated with IV steroids on or around 3/6/23, and more likely than not, she would not have suffered the significant left eye vision loss with which she lives today.

5. As a direct and proximate result of the defendant, Beth Israel Deaconess Hospital – Plymouth, Inc., by its agents', servants', or employees' EMTALA violation on 3/6/23, the plaintiff, Maria Eduarda Gavio Silva, was caused to sustain severe and permanent personal injuries; has incurred and will continue to incur great expense for her medical, surgical, and hospital care and treatment; has suffered and will continue to suffer great pain of body and anguish of mind; has been and will continue to be hospitalized; has been and will continue to be unable to pursue normal activities; and her ability to enjoy life has been permanently adversely affected.

WHEREFORE, the plaintiff, Maria Eduarda Gavio Silva, prays judgment against the defendant, Beth Israel Deaconess Hospital – Plymouth, Inc., in an amount which is just and appropriate to compensate her for her injuries, together with interest and costs.

## Count XXXIII.

1. The plaintiff, Maria Eduarda Gavio Silva, repeats and reavers fully herein Paragraphs One through Seven of Count XXIX, Paragraphs One through Seven of Count XXX, Paragraphs One through Eight of Count XXXI, and Paragraphs One through Five of Count XXXII of this Complaint as if each were set forth here in its entirety.

2. As a direct and proximate result of the defendant, Beth Israel Deaconess Hospital – Plymouth, Inc., by its agents', servants', or employees' negligence, breach of warranties, failure to obtain informed consent, and EMTALA violation, the plaintiff, Maria Eduarda Gavio Silva, has suffered and will continue to suffer severe emotional distress resulting in substantial physical injury.

36

WHEREFORE, the plaintiff, Maria Eduarda Gavio Silva, prays judgment against the defendant, Beth Israel Deaconess Hospital – Plymouth, Inc., in an amount which is just and appropriate to compensate her for her injuries, together with interest and costs.

PLAINTIFF CLAIMS TRIAL BY JURY AS TO ALL ISSUES SO TRIABLE.


Respectfully submitted,
The plaintiff,
By her attorneys,


*/s/ Adam R. Satin*

_____
ADAM R. SATIN, BBO# 633069
LYNN I. HU, BBO# 690823
LUBIN & MEYER, P.C.
28 State Street, 40th Floor
Boston, MA 02109
(617) 720-4447